Thank you Judge Jolly, and may it please the court. The Supreme Court's decision in Gebser v. Laga Vista, and this court's decision in Rosa H., established two rules that preclude the imposition of monetary liability against the school district in this case under Title IX. First, those decisions established that Title IX does not subject school districts to strict liability for the requires a plaintiff to establish that the district had actual notice of the wrongdoing and a meaningful opportunity to correct it. And second, those decisions establish that a wrongdoer's knowledge of his own wrongdoing may not be imputed to a school district for the purposes of meeting Title IX's actual notice requirement. Under that precedent, the imposition of a 4.5 million dollar damages award against the district in this case must be reversed because it is undisputed that the only person with knowledge of the terrible wrongdoing that occurred in this case was the wrongdoer, Michael Alcoser himself. Now plaintiff's principal submission as to why those rules shouldn't be controlled is that the wrongdoer in this case was the principal, someone that he claims is an appropriate person under this court. When an appropriate person engages in wrongdoing, the appropriate person is the district. Everything that the appropriate person does subjects the district's liability. Now there are many problems with that. First, that argument is a pure form of strict liability and vicarious liability that the Supreme Court and this court has emphatically rejected. And one of the reasons why it's rejected it is because of the policy consequences of that ruling. Everyone can agree that any abuse that takes place within the school is terrible and should be prevented. But Title IX only subjects school districts to liability of abuse of which they are aware and of which they have a meaningful opportunity to correct it. And if plaintiff is right, that anyone that can be considered an appropriate person acts as the district and subjects the district to liability for its own rogue actions, then there are scores, if not more, of individuals running around the school that can be subject to the district's liability, including the imposition of crippling damages and warrants. Oh, you're presiding here. Go ahead. I'll follow you. I'm not used to such courtesy. Maybe it's the same question. Go ahead. This person was bringing this child to his office regularly, closing the door and being in there alone with him. Was there no evidence that anyone else at the school and authority knew that this tutoring was happening? Your Honor, there was evidence presented by plaintiffs that a counselor had come in on a few occasions and had seen the two together. Were they doing anything physical together or were they just together? I believe there was some touching, but I think what's most critical for this court is that it's undisputed. It was stipulated, and this is at page 751 of the record on appeal. That the district didn't know. The district didn't know. And that's the only fact that matters for purposes of this analysis. Any argument that they might have made with respect to that counselor can't change the outcome here because it's stipulated that no one at the district had noticed. And what I would say more than that, the jury instruction that the district court allowed in this case, and it's at page 1494 of the record on appeal, specifically says that the plaintiff may establish that the district court had knowledge based on the fact that the principal or vice principal knew of the sexual harassment. So that's the case that they presented to the district court, the case the district court allowed, which is premised on finding a Title IX violation based on the fact that Mr. Alcocer himself knew of his own wrongdoing. I was curious about why a different case wasn't brought. Because there were so many red flags raised. I mean, so many adults saw this child being brought into the office over and over and over again, taken out of class, isolated. I mean, red flags should have flown everywhere. Why wasn't this case tried with a different theory? Your Honor, I guess with your permission, I'll let my colleague answer that question when he's up. I don't know the answer to that question. What I would say, though, is that Mr. Salazar's own mother didn't know of this abuse, and they believed this person was a family friend. Nobody knew what was going on. This was terrible, despicable conduct. As soon as the school district learned what was going on, it immediately took action to fire Mr. Alcocer and to cooperate with the police to put him behind bars where he belongs. And I think that's – We know the facts. That's the relevant part for Title IX. I think, you know, as the case comes before this court, the stipulated fact that no one else at the school district had noticed has to result in the reversal of this crippling $4.5 million damage award. Now, one of the other arguments that Plaintiff has made here is that it can't be the case they argue that Title IX would subject the school district for liability if the principal knew of abuse by another teacher, say a Mr. Salazar, but doesn't impose liability on the school if the principal was committing the abuse himself. But how do the cases define an appropriate person? Your Honor, what this court said in Rosa H. is you look to a person who has the authority to supervise other employees and take corrective action, and that would include a broad range – But that definitely includes the defendant here, I mean the abuser here. We would agree with respect to other employees, and the way that this court defined it in Rosa H., and it's at page 659 of the court's decision, is to look at the authority to supervise other employees. I think it's frankly far-fetched to think of a person as an appropriate person asked to his own misconduct. For the first place, people generally don't have the authority to hire or fire themselves. But how did you get around the fact that he had – that as an appropriate person, setting aside his conduct in this case, he would otherwise be an appropriate person, and any knowledge to an appropriate person is attributable to the district, and this individual had knowledge, actual knowledge. So how did you get around that express definition of the term? I would point to several things. First of all, I don't think that you could regard him as an appropriate person as to his own misconduct. What the administrative enforcement regime says – this is 20 U.S.C. 1682 – is when the agency wants to impose penalties, and this is how the Supreme Court shaped the monetary remedy here. When the agency wants to impose penalties, it has to go to an appropriate person at the district, tell them of the wrongdoing, and give the district an opportunity to correct it. In that situation, it would be absurd to think that the agency would go to the wrongdoer himself and say you've got to take corrective action. They would go to someone else. On what kind of rationale other than just it can't be so, was he not an appropriate person whose actual knowledge is attributable to the district? The rationale that I think to make sense of this scheme, you've got to be an appropriate person as to other persons' conducts, but, Your Honor, let's assume that he was an appropriate person. I don't think that you can impute his knowledge to the school district. That is strict liability, and I think the case that I would point Your Honors to is the W.G. Yates and Sons construction case, where this court dealt with the precise question, albeit in the context under OSHA, where in that case there was a supervisor who had knowledge of both safety violations committed by himself and safety violations committed by others. And what this court said was that you could not impute the supervisor's knowledge of his own safety violations to the employer because that would be the imposition of strict liability. That's exactly what this court said. You could impute the supervisor's knowledge of safety violations by other people he was charged with supervising. Well, do you make any analogy to Monell? Well, not in that case, except, Your Honor, to say that, look, Monell in 1983 and deliberate indifference liability is a basis for liability under Title IX. But with respect to that, I think the key thing is that in order for the district to be deliberately indifferent, it has to have knowledge of the wrongdoing. Here the district had no knowledge whatsoever. What about any kind of argument that whatever authority this man was vested in, he acted outside any authority that might have been invested in him in terms of the district's liability? Well, there's no question that he acted outside the authority. The district couldn't be held to that. How does that help you as a matter of rationale? Well, it means that under a 1983 Type III, you couldn't say that there was any policy on the part of the district. He was acting as a rogue, independent employee, and then to subject the district to liability in that situation would be strict liability. Do you make any effort to try to extrapolate that to this act here? Oh, sure. We talked about 1983 in our briefs, and the Supreme Court looked to 1983 and deliberate indifference as a model for Title IX. One other thing I would say about 1983 is that under this court's precedent, Doe v. Taylor Independent School District, one could have brought a 1983 claim against Mr. Alcocer, the abuser, in his individual capacity. And I think that would have been a very strong claim. Under this court's decision in Doe, you'd have to show that there was abuse. That abuse would amount to a constitutional violation if it was conducted with this authority. And I think there would be no claim against qualified immunity because it's clearly established that you can abuse students. But they initially brought an individual claim against Mr. Alcocer, but then they subsequently essentially dropped that claim. So there are effective – there are other remedies here. There are claims against individuals, wrongdoers under 1983. I think in Rosa H., this court was confronted with the question of, well, if we don't allow liability here, isn't this going to cause districts to stick their heads in the sand? That's exactly what this court said. And the court answered that in two ways. One, it said, look, we have to give effect to the remedial scheme fashioned by Congress in Title IX. And we now know what that remedial scheme is based on Rosa H. and Gebser, and it's not the imposition of strict liability. And the second thing the court said is that even putting morality considerations aside, it would be foolish to think that any school district would knowingly allow this kind of abuse to take place. There are individual remedies in place that can subject school districts to – and individuals to liability. 1983 claims against the district against individuals. And there are plenty of other people at school districts at any time – and this is the policy of the school district in this case. Any time a district employee has knowledge of any wrongdoing, they are required to report it, and the school district is required to act. Ms. Woodard testified to that during her testimony at trial, and that's at pages 1450. I would suggest the court look at pages 14 – 52 to 53. Ms. Woodard also testified as to the many other individuals who could have taken action here if they knew of it, including the superintendent, the associate superintendent, the assistant superintendent, the director of HR, the director of personnel, the Title IX compliance officer. There were plenty of other people who would have been in a position to act if they knew. But no one knew because it's undisputed that as despicable as this conduct was, no one at the district had any reason to know what was going on. And that's the reason why they cannot possibly satisfy Title IX's actual notice requirement. The district never had a meaningful opportunity to correct this because it never knew this was going on and never had any reason to know it was going on. And under those circumstances, the imposition of liability . . . I mean, so from your point of view, your point of view, the rationale of actual knowledge is a much neater way to address this, to address the plaintiff's complaint against you, than Monell liability or the responsibility . . . the acting outside his authority, in effect. I mean, which touches on agency principles which have been excluded by the Supreme Court. I think that's right. I mean, I think Gebser and Rosa H. would advise us . . . provides a framework. And under that framework, there absolutely has to be actual notice to someone in a position to take meaningful action. We know, you know, from the restatement that Gebser said at page 291, that confronting the same argument here, that because the wrongdoer knew of it, the district . . . you can put that to the district, that under agency principles, and this actual notice regime, and this actual notice principle does apply, the knowledge of the wrongdoer himself is not pertinent to the analysis. That's what the Supreme Court said. Did you argue, or whoever argued the case before the jury, that this offender could not possibly be an appropriate official, because there's no way he would institute corrective measures, in other words, stop himself from abusing this child? It just seems so basically ridiculous for this to go to the jury. I absolutely agree with that. Was that argument made? Your Honor, what I would say is, we definitely made the argument that under the Title IX framework, the district should not have been subjected to liability, that the knowledge of the wrongdoer couldn't have been imputed to the district. And I think, I don't know that that's . . . So that the wrongdoer could not be an appropriate official? An appropriate person. Was that made? I don't think that specific argument was made, but I would say that under the principle of ye versus us condito, where the primary argument is made, one on appeal can make additional arguments in support of that theory. And I think the right way to think of the argument that he couldn't have even been an appropriate person, is this is simply an additional argument in support of our theory all throughout this case, that under the Title IX framework established by Gebser and Rosa H., there could not be liability here, because the only person who had knowledge was the wrongdoer himself. It's absurd to think that you would rely on the wrongdoer to correct his own wrongdoing. Anyone can correct their own wrongdoing, but under Title IX, it requires notice to the school district and a meaningful opportunity to correct. Thank you, Your Honors. Thank you, Mr. Perry. Mr. McBride, we'll hear you representing Adrian Salazar. Yes, sir. Okay. I'm going to try this without my glasses and see how far I get. Good morning. May it please the Court, Brendan McBride along with my co-counsel, Rick Garcia, on behalf of the Appellee, Adrian Salazar. I think there's two very important details to get out of the way at the outset of this case. Number one, this was a very, very unusual circumstance. The vast majority of cases that involve child molesters on school campuses involve lower-level employees, like gym teachers and regular teachers and coaches and janitors, and then the issue then becomes whether or not somebody higher up within the hierarchy of the funding recipient had actual knowledge that this lower-level employee was committing heinous acts against a child. This is not that case. This is not the typical case. I don't know of any other cases that have dealt with someone as high as a school principal being the actual child molester. That was going to be my question. I didn't see anything in your briefing. This is the first case in the country that I'm aware of. That I could find as well, Your Honor. And what relevance does that have? Just kidding. The relevance of that is that when you talk about what the standards are for imposing liability, in almost every other case except this one, you are dealing with what the United States Supreme Court called traditional notice principles. So in Gebser, they essentially created – there's two parts to that opinion, and the appellants are overlooking the first part of what that opinion does. The first part of Gebser is it defines a private right of action under Title IX and then determines which persons are persons who act as the district under a direct liability theory of recovery. I, with great respect, have to take issue with you. They go through pages. Justice O'Connor goes through pages about how this is a totally court-made cause of action. It's implied. It's not statutory. Private right. And she goes through the rationale of why. And she goes to great pains to explain that because this is based on funding and the district has to have an opportunity to correct, and it's only when it doesn't correct that the penalty is withdrawing the funds. And it seems to me that I just have a hard time fitting your argument into what Justice O'Connor wrote so extensively about in Gebser. Well, I think I can address that. The rationale for Gebser – I agree with you. The rationale for Gebser is to make sure that there were opportunities for the district to correct abuses. There's no doubt about that. There was a weighing test. It's the same weighing test that this court undertook in Rosa H. There are two major considerations here. There's the fact that we do want to protect children from discrimination on federally funded campuses, and then there's the fact that we want to be able to have the opportunity for the funding recipient to have done something about it. So there was this, both in Rosa H. and in Gebser, there's this undertaking to weigh where you draw the line for who are the people who act as the district and who are the people that don't. So the second thing that I want to put before the court's consideration is that the vast majority of children who are molested by a school employee will not probably have a remedy against the school district because you'd have to either prove that it was an appropriate person who committed the act, and as far as I know, you're looking at the only case where that's come up, or else an appropriate person has to have actually known about it and consciously disregarded it, which is also a very heinous thing to do. But how could the appropriate person be the offender in this case? I'm sorry? How could the appropriate person be the offender in this case? Because he is the offender. He is the offender, right. He is the offender. Why is he the appropriate person? The appropriate person has to be someone who will take corrective action. Right, and he has... Obviously, he's not going to take corrective action. I do want to correct a couple of things about the record here. There were other employees at the school who saw what was going on, including the school counselor walking into Mr. Alcocer's office. We don't have that case, and why don't we have something? Everybody should have known. Why don't we have that case? And I think the reason is because Mr. Alcocer was the Title IX compliance officer for this campus. That's who they would have reported to. And that's why a school principal, a person who stands in the shoes of the school district... So they know that they tell the offender, we know what you're doing and we're through with it, we've gone as high as... That doesn't make sense. I agree it doesn't make sense that nobody did anything, and it's horrible that nobody did anything, but the way that it's structured is that this is the person who is the eyes and ears of the district. I thought you said there were other people that could have been... Nobody above him. Nobody above him. But there are other people that it could have been reported to other than the offender. There could have been, yeah. Yes. But he is... He's not the only appropriate person as a vice principal. There have to be other people. I mean, you can't just say the teacher's not good enough and the vice principal's good enough. There has to be a whole strata of authority in between those two. Where do you draw the line? Well, you draw the line where Debser says you draw the line. It can be any appropriate person. Well, who were these people? Were they appropriate, the people who walked in on him? No, the appropriate person is someone who has authority from the district to take corrective measures. But not the offender himself. Well, no, I don't agree. That defies logic. Well, no, it doesn't defy logic at all. It defies logic to go the other direction. It defies my logic. He's a moral agent. He can always not do what he's doing. Let's look at what Debser actually says. It specifically says that the agent's knowledge is irrelevant, and it cites at several junctures the restatement second of agency section 280, which the black letter law or the black letter statement 280 says if an agent, which would be here, the principal or vice principal, has done an unauthorized act or intends to do one, the principal, which is the district, is not affected by the agent's knowledge that he has done or intends to do the act. Now, that's your case on all fours. I respectfully disagree that it is because that's talking about agency principles, which were rejected in the case. No, Debser cites section 280 specifically as the basis for the implied, you know, underpinning the cause of action. The statement, the knowledge of the wrongdoer himself is not pertinent to the analysis, is the second part of the sentence. There's a whole sentence that that's only part of. And the full sentence is where a school district's liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis. So there is an attempt here to characterize. But then in other parts of the opinion, Justice O'Connor specifically cites the restatement second of agency section 280, which is your guy. He's the agent. The district is the principal, and it says the agent's knowledge, the principal's knowledge, does not affect the principal. Right. But that's because she's responding in part to the argument made by Justice Stevens in the dissenting opinion because they're rejecting agency principles in general. Justice Stevens' position was that this should be treated as an agency issue, a very broad liability, the liability they're trying to say I'm arguing for, which I'm not. I'm not arguing for agency liability. Under your theory, there is no – and she goes at great lengths to talk about the regulations and that this is not going to be a penal thing in the sense that one strike and you're out. There's got to be notice and an opportunity to correct. It's only when the district has notice and does not take action to correct that there's liability. And here the principal is not the district. He is an agent of the district. The district did not have the opportunity to correct. Well, if that were true, then every case in which a principal knows about and deliberately disregards the molestation of a child by a subordinate also does not support liability because in both instances, the only person who knows and has an opportunity to do anything about it is the school principal. No one above that person does anything. The school is not liable because the janitor or the coach wants it done. But here you have a merger of the agent and the – you're arguing – it's a different situation. Tell me a case under agency principles where the agent – the principal is liable under respondeat superior principles when the law otherwise requires imputed knowledge. This isn't an agency case. It's a direct liability case. That's how they characterized it in their subsequent opinion in Davis, the U.S. Supreme Court.  They deny – you're correct. I'm not disputing that. But the Supreme Court denies that it rests on agency principles but essentially then puts it on agency principles to a large extent. And what I wanted to ask you, though, is how do you avoid the charge that is made against your argument that what you're really arguing for is strict liability, which clearly is not contemplated by the cases? Well, I do want to respond to an example that counsel raised about supervisors in the Title VII discrimination context. The logical extension of that argument is that if the CEO of the company with whom – who's the highest authority, the company is not liable if the CEO discriminates or harasses an employee because there's nobody above the CEO to have corrected him. That's the same problem in this context. It is not strict liability because you have somebody on a direct liability theory who is acting on behalf of the entity. So it's not – and strict liability, the concept of strict liability is liable without a – Nobody assumes that if the CEO commits murder that the company is liable for his conduct. And here, nobody is – it's difficult to say that the school district is liable for the illegal conduct of its principal. And that's essentially what the argument is that you have to make. I mean, I'm not faulting you for it, but you've got to argue that they are liable for the criminal acts of the principal. And that's going a long, long way. Under Title IX. Under Title IX. We're not asking you. Right, I understand. But – and that's why it comes back to what this – why this concept of direct liability is different than agency liability or strict liability for that matter. Strict liability is the concept that you don't have to prove negligence in order to impose liability on a defendant. Direct liability is the theory that certain persons high enough up within the structure of an entity or organization have their actions and their knowledge imputed to the organization. Tell me how it's fair that the school district would be liable for the criminal acts of the principal. Well, I will tell you, a school principal who actually is aware that a teacher is molesting a child and deliberately disregards it is also committing a crime. Yet under GEBSER, and I believe they concede, that they would be liable for that. In either instance, the conduct for which they are liable is that of the school principal. That conduct is vile and criminal in both instances. They're not liable for the – I mean, they're not liable for the criminal act of the wrongdoer who is a low-level employee. They're liable on the basis that the principal did not report it and did not fulfill his duty to correct it and to exercise the supervisor's powers to properly go and do it. Which is also an awful and criminal act because he's supposed to report it and do something about it. That's also an awful thing to do. A criminal act? There are, of course, child abuse reporting statutes that apply to school district officials. And you could have sued under that. I mean, there are lots of things you could sue under. We're just focusing on Title IX. It seems to me you had other means of recovering against the school district. We're just focused on Title IX. Well, I'm focusing on Title IX, I believe, as well, because what we're here about is at what point do you draw the line for those persons who act on behalf of the school district for specifically purposes of Title IX. And that is an issue addressed in GEPSR, and I believe that is the primary purpose of GEPSR. GEPSR first deals with who are the people who – But it assumes that the school district is going to have a reasonable opportunity to take corrective action in it. It's not reasonable to say that the perpetrator is going to turn himself in and tell the school district, look what I've been doing. What are you going to do about it? That is not a reasonable reading of GEPSR. But that's equally true of the principal who commits the crime without reporting it when he actually knows about it, and still nobody above the principal. In either case, the school district has no opportunity to do anything about what its eyes and ears at the school campus for Title IX compliance knew and did. You do expect – it is reasonable to expect someone who is not the perpetrator to turn in the perpetrator. It is not reasonable to expect the perpetrator to turn themselves in. Well, while that may be true, the question is in the context of GEPSR and the weighing test, because that's true of the principal who also does – I don't see a weighing test on this issue in GEPSR. I just don't. I'm sorry. I mean, GEPSR, it's narrowly tailoring a court-created remedy. I'm not sure we have the authority, actually. This would be quite an extension, it seems to me, of GEPSR. GEPSR sets a line, a test, to determine those persons who – for whom the knowledge is imputed to the district itself. And in arriving at that line, all of that discussion that we've been talking about from Justice O'Connor is the consideration of the various public policy factors that went into that weighing. It is very similar to the exact same weighing test that this court conducted in the Rose H. opinion the year before. Well, explain to me how Section 280, the restatement, applies in this situation. It's exactly on point. Well, let me, if I may, specifically address that particular issue. I do want to get to that. As I was talking about before, that paragraph is a response to Justice Stevenson. Well, it may be a response to Justice Stevenson, but it also says what in a majority of the court's mind there are some limitations on the cause of action that that court has created. And I'm getting to that. Let me just say, as presiding judge, don't worry about the time. I'm going to give you plenty of time because we're really peppering you with a lot of questions, and you will have an ample opportunity to make your argument. Okay. There are—the principal dispute between the justices in Gebser, between Stevens and the majority, was whether or not this would be a limited liability theory under which only certain people who were employed by a school district would have their knowledge imputed or their conduct essentially imputed to the school district itself or the funding recipient or whether we would apply traditional respondeat superior agency principles. Okay. So there were two counterarguments, and they're both in that same paragraph that we're talking about, to Justice Stevens' dissent. Counterargument number one was the rejection of agency principles. They said we're not going to do agency principles. We're going to have this appropriate person test instead. Okay. So I'm not here arguing for agency principles. Absolutely not. The entity that Gebser was concerned about was the school board. And this vice principal, this later principal, is not the school board. He's a person to which someone can report, and he's expected to report to the school board. He's not the board. I still don't understand how you—he's the agent of the school board. The person that Gebser was concerned about was the appropriate person. No. It says the funding. It talks about the funding, and it talks about actions at the school board and what Congress envisioned about you only withdraw the Title IX funding when the board has had an opportunity to correct sexual discrimination and has not done so. And the person that the court said, okay, if something, if sexual harassment is going on, you can report to an appropriate person who's expected to report to the board. But that's also going to be a problem with those instances where the principal isn't there. That's true, but— So there would be no liability for anything unless it's— But under 280, 280, the person innocent in the sense that he's not the perpetrator vice principal, he's not the one who's doing the unauthorized act. I do want to address that. I have not yet had a chance. I'm asking you. Please address that. Thank you very much. The second part of their disagreement with Justice Stevens is where that citation of 280 comes into effect. Because even under agency— So if you were to apply agency principles, as Justice Stevens was arguing for, then if you look at the agency principles he's applying, they still wouldn't support liability. It is a secondary argument to respond to Justice Stevens' dissent. But the principal argument and the position of that majority's opinion in that case is that they're not applying agency principles anyway. They are applying the appropriate person standard, which they created in that case. The reason they're citing 280 is because they're saying that even if you look at Justice Stevens' own agency theory, it doesn't hold up on the facts of this case. They then go on to specifically address whether or not the principal had knowledge that the teacher was carrying out these acts. And every other court that has looked at— This is when the school district's liability rests on actual notice. That's actual notice to the school district. There was no actual notice to the school district here. The school district is the principal. I disagree. It's actual notice to an appropriate person. That's the holding of that case. I understand your argument. Okay. The holding of that case is that the school district knows when an appropriate person does. That the actions of an appropriate person are the actual— Who is not the perpetrator. It does not say that. Well, that's what the restatement— I take your point. I don't agree with it, but I'll take it. I see your argument. Okay. Give Mr. McBride at least two minutes to make the arguments that he made. Thank you. There is, at the bottom of this, there is a significant public policy weigh-in that has already been undertaken in the creation of the appropriate person test. This court undertook it in Rosa H. The Supreme Court did a version of it in Gebzer and created a rule of direct liability. We don't have to guess that it's a direct liability theory because in Davis that's exactly what they said it was in their subsequent opinion. This is not strict liability. It is not agency liability. It is direct liability. It is the same type of legal theory under which exemplary and punitive damages are imposed on corporate entities when high-ranking officials, principals, and vice-principals of a corporation are the ones who commit the acts. When they act within their authority, though. Right. Well, Mr. Alcazar, according to the undisputed record, had authority as the principal of the school to oversee Title IX compliance. So his failure to report himself or to fire him, to quit, or to stop doing what he was doing, he is a person whose conduct is the conduct of the district. But you say that as a practical matter, that when you make that argument that the school board is liable because he didn't fire himself, that's a rather impractical argument that reaches what we call in the law absurd. Well, I think it would be—I don't think it's absurd when you consider what the purpose of that weighing test was and why that line was drawn where it was because I think you end up with a far more logically absurd result where you have a principal who actually knows that a teacher in his school actually is aware of it, a teacher in his school molesting a child on a daily basis, and chooses to specifically do nothing about it. He's not going to report himself either. He's not going to—he's also breaking the law. He's also doing something that is fundamentally awful. Yet—and the superintendent is not going to know about any of this because this is the person at the school level who is their compliance officer. The superintendent is not going to know about it. The overall district compliance officer is not going to know about it. The board is not going to know about it. But in Gebser, they're liable for that. But you—in the normal course of things, that person normally would report. Now he or she, for whatever reason, may not in some specific case, but in the vast majority of cases, as soon as that person knows, the innocent agent is going to report to the board of the superintendent. Action is going to be taken. Then if they don't, there's liability. Well, but they're not an innocent agent in that instance either. Somebody is doing something horribly wrong already if they are consciously disregarding a child being molested on their campus. But you're— I don't— I take your—again, I see your argument. I understand what you're saying. Yet we support liability for that same person who's not going to— Because we expect a person who's not a child molester to report when they learn someone is molesting a child. We do not expect a child molester to report themselves. And there's a big difference there, it seems to me. I think that in both instances, the district is liable for the conduct of the principal. In the actual, traditional notice principles, which is the first part of that sentence from that paragraph that contains the reference to Restatement 280, which was taken out of context, that whole sentence is that we're in a world where we're talking about those cases where it's traditional notice principles. Why is that structured that way? The reason it's structured that way is because they've already set out this direct liability theory. Now they're turning to the most common class of cases, which was the one in front of them, which is where the person who meets their appropriate person test isn't the person who committed the acts. So the claim depends on traditional notice principles. In those cases, which is almost every other case but this one, then you have this additional requirement you have to meet. And it's a heavy burden when the actor's not an appropriate person. Why didn't you allege other causes of action? Why are we here on Title IX? Well, a direct cause of action is Michael Alcozer for Section 1983 would have resulted in no realistic remedy. He's serving a long prison term. Well, are there other state law causes of action that you might have gotten the district? Because all these people saw this. Nobody did anything. I mean, I feel like you're trying to shoehorn tort law into Title IX when it seems like there are other causes of action. I don't think that there are. There's state law sovereign immunity issues. There's other causes of action like Section 1983 that do require board-level conduct. You have no other causes of action against the school board. Against the school district. Against the deep pocket. That's where the remedy is in this case, unfortunately. That's the circumstances of the case. It seemed to me you had a strong case for constructive knowledge of all these people when that little boy was paraded through the office day in and day out, week in and week out. But constructive knowledge of persons not at the board level isn't going to be sufficient I'm not going to argue your case for you. I'm just saying. There isn't another remedy, and Title IX is a That's your argument. Title IX is a broader remedy than Section 1983. Because for 1983, you do have to have board-level involvement. For Title IX, the test is an appropriate person. That is reflective of the weighing test that this court undertook in Rose H. It's the line that was drawn by the United States Supreme Court in I think we're beginning to repeat ourselves, but if you have something else that you would like to say that you haven't said, I will be glad to entertain it. I think it is impossible to logically justify a rule. Or morally justify a rule. Where a school district's liability is treated differently when somebody who has a high level of authority within that school district knowingly disregards a child being molested and imposes liability in that circumstance when no one else above that person knew about it and does not impose liability simply because that person did it himself. And the weighing test that was undertaken in Gebser and Rose H. is intended to treat those two instances equally. And so we ask that this judgment be affirmed. Thank you, Mr. McBride. Mr. Gary, we'll hear from you now. Thank you, Your Honors. First, Judge Clement, with respect to your question about whether it was argued below that he was not an appropriate person, I would point you to page 1501 of the record on Appeal 2 where an objection was made to the argument that he could be officially acting as a molester in that capacity. But then you already heard that argument. Well, that was an argument made to the judge, Your Honor, of 1501. Secondly, I would submit that my colleague's theory before this court is utterly incompatible with Gebser and existing Title IX precedent. The primary theory that I heard was that it's enough if someone is an appropriate person. Well, if that's true, then the Supreme Court and this court wasted its time emphasizing that actual notice was required. It's not an appropriate person test. Well, he says it's a direct liability case. Well, Your Honor, he's right. Gebser and Davis talk about Title IX as direct liability, but the reason why it's direct liability is because the district, the school district, had notice of the violation and failed to act. And so you can hold the district accountable in that situation. You can't do that here because the district never had notice of any wrongdoing. That's undisputed. Which goes back to what's the definition of an appropriate person? Well, I don't think it goes right to that, Your Honor. Our position is certainly he can't be an appropriate person as to his own conduct. That's absurd. But I think it really goes also to this question of can you impute his notice to the district? And I think, as Judge Owen pointed out, the Supreme Court was emphatic that Section 280 of the Restatement of Deceived Law implies, and under that principle, notice of the wrongdoer's notice of his own wrongdoing cannot be imputed. Now, his main argument on that is it doesn't make any sense to say you can impute the principal's knowledge of someone else's wrongdoing but not his knowledge of his own wrongdoing. And this court has a case that directly answers that question. It's a W.G. Yates and Sons case which says that where you have someone who is a supervisor as knowledge of his own wrongdoing, that's a different situation. Those are the words this court used. And the situation where he is supervisor as knowledge of someone else's wrongdoing precisely for the reasons that Judge Owen suggested. Well, his argument is that an appropriate person is equated with the school district. And that's strict liability. That's vicarious liability. And we know the Supreme Court has emphatically rejected that. It's not an appropriate person test. It's actual notice and a meaningful opportunity to correct. And if you say that it's just an appropriate person test, then you have scores of people in these school districts that anything that they do can subject the school district to crippling liability. And keep in mind here, it's undisputed here, the school district had a policy of subjecting all employees to background checks. You have to get a certificate from the state school board before you hire someone like Mr. Alcazar. They did all that, and no one had any reason to suspect that this person posed any risk at all. And we would all love if there were not rogue, terrible people in the world that would do these things. But the sad fact is that there are. And under Title IX, you cannot subject the school district to liability for this unless it had notice and an opportunity to correct. And one of the reasons why— I know this has nothing to do with this case, but has the school district changed its policies now about when principals go pull children out of classes repeatedly, week in and week out? I mean, take them behind closed doors? Well, of course the school district is doing everything that it can to— Has it changed its policy? Well, it has always had a policy that prohibits this kind of abuse and that requires reporting. But again, going to this question of whether there are others that should have known about this, the stipulation— I understand. I understand. But it does say, other than Michael Alcazar, no one else. But we would all have loved for this to have come to light. And if it had, there's no question, in our mind, the school district would have taken prompt action, just as it did when it did come to light. It immediately took steps to terminate Mr. Alcazar, cooperated with the police to put him behind bars. In the Cunetillo case, Your Honors, this court addressed the policy concerns about extending Title IX beyond existing precedent. And what it said is that under Title IX, school districts are not designated to be the insurers for large damages awards, and that if we were going to make them the insurers, that would come at the great expense of their role as educators. And I think that that concern is particularly true in a case like this where you have a district that is serving a largely underprivileged community. Title IX does not permit the imposition of liability in this case where it is undisputed that the school district had no knowledge whatsoever of the wrongdoing. What Mr. Alcazar did is despicable, but Title IX doesn't make the school district the guarantor in the form of a $4.5 million damages award. With respect, we ask the court to reverse the decision below. Mr. Perry. We'll call the next case of the day, and that's Joseph J. Williams.